LETITIA V. SWANSON ET AL., APPELLANTS, V. BOARD OF
EQUALIZATION OF FILLMORE COUNTY ET AL., APPELLEES.

6 N. W. (2d) 777

FILED DECEMBER 11, 1942. No. 31454.

Charles F. Adams, for appellants.

John C. Gewacke and Robert B. Waring, contra.

Heard before SIMMONS, C. J., EBERLY, CARTER, MESS-MORE and YEAGER, JJ.

MESSMORE, J.

The plaintiffs' petition alleges ownership of a 320-acre farm near Fairmont, Nebraska, described in the petition; that said real estate was valued and assessed for taxation for the year 1941 at $15,775; that on June 11, 1941, the plaintiffs and Erma E. Gorham filed a written complaint with the board of equalization of Fillmore county, praying that the valuation and assessment of such real estate for taxation for the year 1941 be reduced to $9,600; that on June 28, 1941, the board of equalization entered its decision, refusing to reduce the valuation, and ordered the same to remain as assessed; that said valuation and assessment of $15,775 is exorbitant and excessive and is greatly in excess of the actual value of the real estate as the term "actual value" is defined and used in the revenue laws of Nebraska; an appeal was perfected, and plaintiffs pray that the district court enter a decree finding, determining and adjudging the actual value of the real estate.

An answer was filed and a motion to withdraw the answer for the purpose of filing other pleadings; a motion to dismiss was filed and subsequently a demurrer, both of which were overruled. An amended answer was filed, denying every allegation of the plaintiffs' petition except that the plaintiffs were the record owners of the real estate described in the petition, that it was valued and assessed for

taxes in the amount of $15,775, and alleging that the same is not exorbitant and excessive and is not in excess of the actual value of the real estate, as contemplated by the revenue laws of Nebraska; that said valuation and assessment are not disproportionate to other property situated in the county and assessment district, but are properly equalized; that such real estate was valued for assessment as provided by law during the fiscal year of 1940; that said assessment was legally made by the proper public authorities during said year; that no complaint was made in 1940 by the owners as to the assessed valuation, and the only complaint made as to the assessed valuation was during the year 1941. The reply was a general denial.

The court dismissed plaintiffs' appeal, holding that the burden of proof to establish the actual value is undoubtedly with the plaintiffs; that an examination of the record discloses insufficient evidence as to the actual value, and that plaintiffs failed to establish their case by competent evidence, and the court adjudged costs against the plaintiffs. From this order of dismissal the plaintiffs appeal to this court.

The principal assignments of error are that the findings and judgment of the trial court are contrary to the evidence and the law, and that the court erred in finding that the plaintiffs had failed to adduce competent evidence to sustain the allegations of their petition.

The plaintiffs' evidence discloses the fair market value of the real estate, as of April 1, 1941, to range from $35 an acre, or $11,200, to $37.50 an acre, or $12,000; $30 an acre, or $9,600, and $40 an acre, or $12,800. The defendants' testimony discloses the fair market value of the land in question to be $15,400, $16,000 and $15,775. The map of the school districts and the soil survey of the county appear in the record; almost the entire half-section is tillable and one of the best productive farms in the county.

The defendants present the following question: Can the board of equalization in an off year entertain objections by an owner of real estate, relative to the valuation and as-

sessment for taxation purposes, made by the state board in an even year? The defendants rely on section 77-1601, Comp. St. 1929, as amended by chapter 130, Laws 1933. Said section, as far as applicable here, provides as follows: "All real property in this state subject to taxation shall be assessed on the first day of April, 1933 and 1934 and every second year thereafter, which assessment shall be used as a basis of valuation for taxation until the next regular assessment;" and on that part of section 77-1503, Comp. St. 1929, which provides: "The total assessed value of any real property, including the interests of the mortgagor and mortgagee, shall not be changed except when all the real property of the county is assessed, unless its value is changed by reason of altered conditions." Citing *Sloan v. Fillmore County*, 126 Neb. 524, 253 N. W. 869, in which this court held:

"Under sections 77-1503 and 77-1601, Comp. St. 1929, the board of equalization of Fillmore county was right in refusing to reduce the assessments upon 16 tracts of farm land in June, 1932."

In *Sloan v. Fillmore County, supra,* William J. Sloan and 15 other farmers, who owned property within school district No. 75, which embraces the city of Geneva, filed complaints before the county equalization board, alleging that their farms were assessed for taxation at an excessive valuation. The opinion recites that the case was founded upon the assessed value of the farm lands for the single year of 1932. Complaints were filed before the board of equalization June 16, 1932, hearings had thereon June 24, 1932, and the claims rejected. The evidence was confined to the year 1932, and there was no evidence showing a reduction in value over a period of years. The equalization board having turned down the complaints, the matter was appealed to the district court, with the same result; then appealed to this court, which held as above stated; and that under section 77-1601, Comp. St. 1929, it was provided that all real property should be assessed in the year 1926 and each four years thereafter, and in the opinion it was stated that

section 77-1503, Comp. St. 1929, provided: "The total assessed value of any real property * * * shall not be changed except when all the real property of the county is assessed, unless its value is changed by reason of altered conditions," the court stating that section 77-1601, *supra,* provided that "all real property should be assessed in 1926 and each four years thereafter. Therefore, the year 1930 was the year when all the assessed values could be changed by law. 1932 was not the proper year to seek to change the assessed valuation upon these 16 farms, and the board of equalization, finding no altered conditions which required relief in 1932, properly refused to grant any relief that year;" even though section 77-1601 was amended in 1933 (Laws 1933, ch. 130) "that could not affect the plaintiff's relief hereunder."

This court in the *Sloan* case refers to *Power v. Jones,* 126 Neb. 529, 253 N. W. 867, for "a further discussion of the points involved;" the court saying: "It is clear that the law contemplates an appeal to the board of equalization by landowners only in the year when all the real property of the county is assessed, except in the case of new improvements, or destruction thereof, or other special circumstances, which are not shown in the record before us. There being no error in the record, the judgment of the trial court is affirmed."

In *Power v. Jones, supra,* it was said in the opinion: "The assessing authorities are required to make valuation once in four years of all real estate, as of April 1, by section 77-1601, Comp. St. 1929." Then followed an explanation of the provision of the statute and the amendment thereof in 1933, as herebefore stated, and section 77-1503, Comp. St. 1929, was cited, providing that such valuation "shall not be changed except when all the real property of the county is assessed, unless for altered conditions, which is not alleged in this case." The court held: "Where the claim is made that real property is assessed too high, the taxpayer should first apply for relief to the board of equalization, as provided in section 77-1702, Comp. St. 1929, and

if relief is there denied, he should appeal to the courts," and the holding in the case with reference to the subject-matter was: "The claim that real property is assessed too high cannot be made for the first time in a collateral attack against the collection of the tax." A careful reading of the above case indicates clearly that the language quoted, as to sections 77-1601 and 77-1503, Comp. St. 1929, could have been eliminated from the opinion without doing violence to the holding. We think the foregoing distinction between the *Power* and *Sloan* cases and the subject-matter in the case at bar is sufficient.

The plaintiffs rely on section 77-201, Comp. St. 1929, as amended by chapter 102, Laws 1939, which provides: "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and assessed at its actual value. In arriving at the 'actual value' of property, as used in this act, there shall be taken into consideration its value in the market in the ordinary course of trade and in arriving at the 'actual value' of real property there shall also be taken into consideration the proximity of such property to markets, the school facilities and other advantages and other facilities afforded by the governmental subdivision or subdivisions in which the real property is situated, the tax burden upon the real property, and every other element or factor affecting the actual value of said real property," and plaintiffs rely on section 77-1702, Comp. St. 1929, the second portion of which is material for consideration. It reads: "Second. At its meeting in 1912 and every second year thereafter equalize the valuation of real property of the county by raising the valuation of such tracts and lots as are assessed too low, and lowering the valuation of such tracts and lots as are assessed too high; but in cases of evident error of assessment or of apparent gross injustice in overvaluation or undervaluation of real property, the county board of equalization may at its annual meetings consider and correct the same by raising, after due notice has been given to the interested party or parties, or by lowering the assessed val-

uation of such real property. In cases where farm lands or real property consisting of city, town, or village blocks or lots have been assessed as entities and after time of such assessment part or parts of such entities have been transferred by the owner or owners thereof to another party or to other parties by sale or otherwise, then the county board may at such annual meeting as board of equalization apportion the just and equitable proportion of the assessed valuation of such entities to the various parcels of lands into which such entities have by transfer of title been divided, upon notice given to the parties of such transfer." Citing *State v. Grow*, 74 Neb. 850, 105 N. W. 898.

The trial court based its judgment on the failure of the plaintiffs to produce sufficient evidence to show the elements necessary in arriving at the actual value as set forth in section 77-201, Comp. St. 1929, as amended by chapter 102, Laws 1939.

This court, subsequent to the time of trial of the instant case, in *Homan v. Board of Equalization*, 141 Neb. 400, 3 N. W. (2d) 650, held: "The provisions of chapter 102, Laws 1939 (amending section 77-201, Comp. St. 1929), provide a method of fixing the valuation of real property different from that prescribed for other tangible property, contrary to the uniformity provision of section 1, art. VIII of the Constitution, and it is consequently void."

Therefore, the amendment to section 77-201, Comp. St. 1929 (Laws 1939, ch. 102), is void, leaving section 77-201, Comp. St. 1929, without such amendment, the law. The trial court did not have the advantage of the decision in the *Homan* case when it passed upon the question involved in the instant case. The sole contention in the case at bar is the objection to the valuation and assessment of one tract of land by the owners, and it is not based on comparative tax burdens imposed on the land in question and on adjoining lands, as was contended for in the case of *Sloan v. Fillmore County, supra*. The *Sloan* case was brought by and in behalf of all the landowners in the school district similarly situated, and asked for the reassessment and re-

valuation of all the farm land included in said school district.

Section 77-1503, Comp. St. 1929, prohibits a change in the total assessed valuation of real estate except in even years, unless there are altered conditions. Section 77-1702, *supra*, expressly provides that the board of equalization shall be in session every year, and at such sessions is given the power to act in five different situations, and one of those situations is presented when there is apparent a gross injustice in the overvaluation or undervaluation, and then the board at its annual meeting may consider and correct the same. On a reading of the two statutes, it would seem that, in connection with section 77-1503, *supra*, section 77-1702, Comp. St. 1929, would be conflicting.

The history of section 77-1503, Comp. St. 1929, discloses the following: It was originally enacted in 1911 (Laws 1911, ch. 105, sec. 3) under the title: "An Act to provide for the taxation of mortgages of real property and to prevent double taxation on encumbered property in the state." It became section 6351, Rev. St. 1913, which was amended in 1919 (Laws 1919, ch. 138, sec. 2) with reference to the duties of officers. The original act provided "that the total assessed value of any real property, including the interest of the mortgagor and mortgagee shall not be changed excepting when all the real property of the county is assessed, unless the value of said property is changed by reason of a change in the improvements thereon" (Laws 1911, ch. 105, sec. 3), while the amendment of 1919 provided: "The total assessed value of any real property, including the interests of the mortgagor and mortgagee, shall not be changed except when all the real property of the county is assessed, unless its value is changed by reason of altered conditions." Laws 1919, ch. 138, sec. 2. The act then became section 5952, Comp. St. 1922, and was amended by chapter 178, Laws 1927, the title to the act reading: "An Act to amend section 5952 * * *, relating to revenue, to declare an emergency and to repeal said original section." The amendment contained the same provision as heretofore set out. The act is now section 77-1503, Comp. St. 1929.

It is clear that the title of the act, and the legislative intent to be gathered therefrom, was to provide for the taxation of mortgages on real property, and to prevent double taxation on encumbered property in this state. The foregoing explanation of the history of section 77-1503, *supra*, is to show that said section, as originally enacted, is not conflicting with section 77-1702, Comp. St. 1929, which was amended in 1911 just subsequently to the passing of said section 77-1503 (Laws 1911, ch. 104, sec. 14), which is further evidence of the legislative intent with reference to the two sections herein discussed.

In *State v. Grow, supra,* the court held that section 77-1702, *supra,* therein referred to as section 121, art. 1, ch. 77, Compiled Statutes 1903, "authorizes a county board to correct 'evident errors of assessment, or of apparent gross injustice, in overvaluation or undervaluation of real property,' at any of its annual meetings, whether such errors or injustice be due to some act of the assessor or to that of the board itself." This court said: "The act is remedial, and was intended to reach cases where, because of 'evident error of assessment or of apparent gross injustice of overvaluation or undervaluation,' a taxpayer would bear more or less than his just share of the burden of taxation." The petition in the foregoing case alleged that there were evident errors of assessment and gross injustice in overvaluation of the real estate described in the petition, as valued and equalized by the board for the purpose of taxation in 1904. The petition in the instant case alleges that the valuation and assessment of the board of equalization is $15,775; that the actual valuation of the real estate on April 1, 1941, was $9,600. If the allegations are true, then there is the question as to whether or not there is gross injustice in the real estate as assessed, and whether or not there is overvaluation, as contended for by the plaintiffs.

The cases of *Edgerton v. Board of Equalization,* 140 Neb. 493, 300 N. W. 413, *Aurora Hotel v. Board of Equalization,* 140 Neb. 511, 300 N. W. 419, and *Wilson & Co. v. Otoe County,* 140 Neb. 518, 300 N. W. 415, are cited. In the

*Edgerton* case the court held: "Under the provisions of section 77-201, Comp. St. Supp. 1939, the legislature has set out certain elements to be considered in determining the actual value of property, as well as requiring that every other element affecting the actual value be considered." In *Wilson & Co. v. Otoe County, supra,* the court held: "Property for taxation purposes shall be valued 'and assessed at its actual value, that is, its value in the market in the ordinary course of trade;" in other words, its fair market value. The latter case was decided under section 77-201, Comp. St. 1929, before it was amended in 1939. The *Homan* case places the instant case in the same catagory as *Wilson & Co. v. Otoe County,* and makes applicable the same rule therein. This brings us to the question of the fair market value to be determined from the record in a trial *de novo* in this court.

Considering a case of this character, where valuation of land ranges from $30 to a little better than $50 an acre, depending on the witnesses for either the complaining party or the county, we believe from the evidence that the fair market value of the land involved herein on April 1, 1941, would be $14,000. This being true, it was overvalued for taxation purposes in the amount of $1,775. We remand the case, with instructions to the court to enter the proper order fixing the plaintiffs' property for valuation in the amount of $14,000, as constituting the proper sum under the evidence adduced. .

The legislature, by the amendment of section 77-201, Comp. St. 1929 (Laws 1939, ch. 102), in view of the holding in the *Homan* case, has not abrogated the rule as set forth in *Schulz v. Dixon County,* 134 Neb. 549, 279 N. W. 179, as follows: " 'Farm lands,' for the purpose of taxation, shall be valued and assessed at their actual cash value —their value in the market in the ordinary course of trade." See, also, *Kennedy v. Buffalo County,* 134 Neb. 744, 279 N. W. 464.

The defendants offered evidence of the value of other lands in the immediate vicinity and the sale price thereof.

While this question has not been directly before the court in cases of this character, we have recently passed upon the admissibility of such evidence in condemnation proceedings, in the case of *Rushart v. Department of Roads and Irrigation, ante,* p. 301, 5 N. W. (2d) 884, wherein we held such evidence to be incompetent, sustaining the holding in *State v. Wright,* 105 Neb. 617, 181 N. W. 539, and giving the reasons therefor in the opinion. Such evidence in some states is admissible only to test the credibility of the knowledge of the expert witness. Such evidence in the case at bar consists of the sale of 757½ acres of land in the immediate vicinity for the amount of $37,878.50, or for an average of $50.03 an acre.

We have not undertaken to detail the evidence, but have analyzed the record, to ascertain what we believe to be the true market value of this farm and the right of the plaintiffs to have the matter considered, under the provisions of the statute, as presented by the plaintiffs.

The judgment of the district court is reversed and the cause remanded, with directions in conformity with this opinion.

REVERSED.